RYAN H. CROSNER, CA Bar No. 278418
ryan.crosner@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

BRIANA LABRIOLA, CA Bar No. 293548
briana.labriola@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone: 714-800-7900
Facsimile: 714-754-1298

Attorneys for Defendants
TRICOLOR AUTO GROUP, LLC;
TRICOLOR CALIFORNIA AUTO GROUP, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CROSS, an individual, on behalf of himself and on behalf of other persons similarly situated and aggrieved,<br><br>          Plaintiff,<br><br>      v.<br><br>TRICOLOR AUTO GROUP, LLC, a Delaware Corporation; TRICOLOR CALIFORNIA AUTO GROUP, LLC, a Delaware corporation; and DOES 1 TO 50, inclusive,<br><br>          Defendants. | Case No. 1:22-CV-00857<br><br>**DEFENDANTS TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[*Filed concurrently with Civil Cover Sheet, Certification of Interested Parties and Disclosure Statement; Declarations of Timothy Fox, Jerry Kollar and Briana LaBriola in Support of Removal*]<br><br>Complaint Filed: August 8, 2022<br>Trial Date: None Set<br>District Judge: TBD<br>Magistrate Judge: TBD |

Case No. 1:22-CV-00857

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

# TABLE OF CONTENTS

**Page**

I.   THE STATE COURT ACTION ................................................................ 1

II.  THIS COURT HAS JURISDICTION UNDER THE CLASS
     ACTION FAIRNESS ACT ................................................................ 2

     A.   The Size of the Putative Class Exceeds 100 ................................ 2

     B.   The Parties Are Diverse ................................................................ 3

     C.   The Amount in Controversy Exceeds an Aggregate of
          $5,000,000 ................................................................................ 4

          1.   Defendants' Estimate of the Amount in
               Controversy ................................................................ 6

          2.   The Amount Placed in Controversy by the Failure
               to Provide Rest Periods Claim ............................................ 6

          3.   The Amount Placed in Controversy by the Failure
               to Provide Meal Periods Claim ............................................ 8

          4.   The Amount Placed in Controversy by the
               Minimum Wage Claim.......................................................... 10

          5.   The Amount Placed in Controversy by the Unpaid
               Overtime Claim. ................................................................ 11

          6.   The Amount Placed in Controversy by the Failure
               to Provide Accurate Wage Statements............................... 13

          7.   The Amount Placed in Controversy by Plaintiff's
               Waiting Time Penalties Claim ............................................ 15

          8.   Attorneys' Fees Further Increase the Amount in
               Controversy ................................................................ 17

          9.   Summary of Defendants' Calculations ............................... 19

III. DEFENDANTS HAVE SATISFIED THE REMAINING
     REMOVAL REQUIREMENTS............................................................ 20

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE
OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altamirano v. Shaw Indus., Inc.*,
   C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013) ..................... 5, 17

*Arias v. Residence Inn by Marriott*,
   936 F.3d 920 (9th Cir. 2019)........................................................................ 7, 9

*Baker v. Propak Logistics, Inc.*,
   No. EDCV-191241-JGBSHKX, 2019 WL 4168998 (C.D. Cal. Sept.
   3, 2019) ............................................................................................................ 14

*Brady v. Mercedes-Benz USA, Inc.*,
   243 F. Supp. 2d 1004 (N.D. Cal. 2002)............................................................ 18

*Cosgrove v. Bartolotta*,
   150 F.3d 729 (7th Cir. 1998) .............................................................................. 3

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
   899 F.3d 785 (9th Cir. 2018)...................................................................... 17, 18

*Goldberg v. CPC Int'l*,
   678 F.2d 1365 (9th Cir. 1982) ........................................................................... 18

*Guglielmino v. McKee Foods Corp.*,
   506 F.3d 696 (9th Cir. 2007).............................................................................. 5

*Haase v. Aerodynamics Inc.*,
   No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519 (E.D. Cal. 2009)................ 18

*Jasso v. Money Mart Express, Inc.*,
   No. 11-CV-5500 YGR, 2012 WL 699465 (N. D. Cal. Mar. 1, 2012) ............. 5, 19

*Jimenez v. Allstate Ins. Co.*,
   2011 WL 65764 (C.D. Cal. 2011) ..................................................................... 12

*Johnson v. Columbia Properties Anchorage, LP*,
   437 F.3d 894 (9th Cir. 2006) .............................................................................. 3

*Kanter v. Warner-Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001) .............................................................................. 3

*Kantor v. Wellesley Galleries, Ltd.*,
   704 F.2d 1088 (9th Cir. 1983) ............................................................................ 3

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986) .............................................................................. 4

*McCabe v. General Foods Corp.*,
   811 F.2d 1336 (9th Cir. 1987) ............................................................................ 2

*Muniz v. Pilot Travel Ctrs. LLC*,
  No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May
  1, 2007) .................................................................................................*passim*

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999) ............................................................................ 2

*Olson v. Becton, Dickinson & Co.*,
  19-cv-865-MMA, 2019 WL 4673329 (S.D. Cal. Sept. 25, 2019) ........ 7

*Quintana v. Claire's Stores, Inc.*,
  No. 13-0368-PSG, 2013 WL 1736671 (N.D. Cal. Apr. 22, 2013) ...... 16

*Ray v. Wells Fargo Bank, N.A.*,
  2011 WL 1790123 (C.D. Cal. May 9, 2011) ..................................... 12

*Rhoades v. Progressive Cas. Ins. Co., Inc.*,
  410 Fed.Appx. 10 (9th Cir. 2010) .................................................... 12

*Rodriguez v. AT&T Mobility Servs. LLC*,
  728 F.3d 975 (9th Cir. 2013) ........................................................ 4, 5

*Simmons v. PCR Tech.*,
  209 F. Supp. 2d 1029 (N.D. Cal. 2002) ........................................... 18

*Stevenson v. Dollar Tree Stores, Inc.*,
  2011 WL 4928753 (E.D. Cal. 2011) ............................................ 12, 16

*Torrez v. Freedom Mortg., Corp.*,
  2017 WL 2713400 (C.D. Cal. June 22, 2017) .................................. 14

*United Parcel Serv. Wage & Hour Cases*,
  196 Cal. App. 4th 57 (2011) .......................................................... 7, 9

*Unutoa v. Interstate Hotels and Resorts, Inc.*,
  No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512 (C.D. Cal. Mar. 3,
  2015) ............................................................................................... 9

**California Cases**

*Brinker Rest. Corp. v. Sup. Ct.*,
  53 Cal. 4th 1004 (2012) ................................................................ 7, 9

*Mamika v. Barca*,
  68 Cal. App. 4th 487 (1998) ....................................................... 15, 16

*Pineda v. Bank of Am.*,
  50 Cal. 4th 1389 (2010) ................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii                    Case No. 1:22-CV-00857
DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

53466279.v1-OGLETREE

# Federal Statutes

28 U.S.C.
  §§ 1332(d)(2) and (d)(6)................................................................2
  § 1441(a)........................................................................2, 20
  § 1446(b)........................................................................2

# California Statutes

Cal. Civ. Proc. Code 338(a)...............................................................17

Cal. Lab. Code
  § 226(e)(1)........................................................................13
  § 226.7(c).........................................................................9
  § 512(a)...........................................................................9
  § 1194.2(a)........................................................................11

Cal. Labor Code
  § 510 .............................................................................11

Labor Code
  § 226(e)...........................................................................13

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S
NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF THOMAS CROSS AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants TRICOLOR AUTO GROUP, LLC and TRICOLOR CALIFORNIA AUTO GROUP, LLC ("Defendants"), by and through the undersigned counsel, hereby remove the above-entitled action from the Superior Court of the State of California for the County of Sacramento to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"). In support of such removal, Defendants state as follows:

**I.      THE STATE COURT ACTION**

1.      On August 8, 2022, plaintiff Thomas Cross ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Sacramento, entitled *Thomas Cross, an individual, on behalf of himself and on behalf of other persons similarly situated and aggrieved, Plaintiff, v. TRICOLOR AUTO GROUP, LLC, a Delaware Corporation; TRICOLOR CALIFORNIA AUTO GROUP, LLC, a Delaware corporation; and DOES 1 TO 50, inclusive, Defendants*, which was assigned case number 34-2022-00325056 (the "State Court Action").

2.      The Complaint alleges class claims for: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Pay All Wages Due to Discharged and Quitting Employees; (6) Failure to Maintain Required Records; (7) Failure to Furnish Accurate Itemized Wage Statements; (8) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; (9) Unfair and Unlawful Business Practices; and (10) Penalties under the Labor Code Private Attorneys General Act, as Representative Action.

3.      On September 27, 2022, Plaintiff personally served the Complaint on Defendants' agent for service of process, as well as other documents filed in the State Court Action.  Declaration of Briana LaBriola ("LaBriola Decl.") ¶ 2.  A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.  *Id.*

4.      As further required by 28 U.S.C. § 1446(a), Defendants hereby provide this Court with copies of all process, pleadings, and orders received by Defendants in this action.  True and correct copies of these documents are attached as **Exhibit B** to this Notice of Removal.  Defendants have not been served with any pleadings, process, or orders besides those attached.  LaBriola Decl., ¶ 3.

5.      Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal.  28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

6.      <u>This Notice is Timely</u>. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of the service upon Defendants.  28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-54 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

## II.    <u>THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT</u>

7.      This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendants pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A.    <u>The Size of the Putative Class Exceeds 100</u>

8.      In the Complaint, Plaintiff defines the proposed class as: "all current and former non-exempt employees of [Defendants] in the State of California at any time

within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgment."  Exh. A, ¶ 5.

9.      Defendants' employment records show that there are at least 465 current and former employees who fall within Plaintiff's proposed class.  Declaration of Timothy Fox ("Fox Decl."), ¶ 7.

**B.      The Parties Are Diverse**

10.      Citizenship of Defendants.  The citizenship of a limited liability company for purposes of diversity jurisdiction is the citizenship of its members. *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

11.      None of Defendant Tricolor Auto Group, LLC's members are residents of the state of California.  Declaration of Jerry Kollar ("Company Decl."), ¶¶ 3-5. Accordingly, none of defendant Tricolor Auto Group, LLC's members are citizens of the State of California.

12.      None of Defendant Tricolor California Auto Group, LLC's members are residents of the state of Texas.  Company Decl. ¶¶ 3-5.  Accordingly, none of defendant Tricolor California Auto Group, LLC's members are citizens of the State of California.

13.      Therefore, for purposes of determining diversity, Defendants are not regarded as citizens of California.

14.      Citizenship of Plaintiff and putative class members.  For diversity purposes, an individual is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  An individual's domicile is the place he resides with the intention to remain or to which he intends to return.  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001).

15.      The Complaint alleges that Plaintiff is a resident of the State of California and was employed for defendant Tricolor California Auto Group, LLC in Sacramento, California.  Exh. A, ¶ 4.  Likewise, defendant Tricolor California Auto

Group, LLC's employment records, including the home address that Plaintiff provided for payroll purposes, confirm that throughout Plaintiff's employment with defendant Tricolor California Auto Group, LLC, Plaintiff lived in the State of California.  Company Decl., ¶ 5.  Thus, Plaintiff is a citizen of the State of California.

16.    Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California.  *See, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship).  Thus, even if Plaintiff was somehow a citizen of Texas or Delaware (and there is no evidence that he is), there is no possible way that 464 putative class members, all of whom worked in California (Exh. A, ¶ 5), were also citizens of Texas or Delaware.

17.    Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendants are not citizens of California while Plaintiff, a putative class member, is a citizen of California.

### C.    The Amount in Controversy Exceeds an Aggregate of $5,000,000

18.    Plaintiff has not alleged a specific amount in controversy in the Complaint.  In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  To do so, the removing defendant must "produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint."  *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

19.    In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the

absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 591 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

20.    While Defendants deny the validity of Plaintiff's claims and requests for relief and do not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to class wide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700-701.

21.    As described further below, as well as in the concurrently filed declarations from Timothy Fox and Jerry Kollar,[1] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

---

[1] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g., Muniz*, 2007 WL 1302504, at *2 fn. 5, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [*sic*] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

### 1.    Defendants' Estimate of the Amount in Controversy

22.    In determining the amount in controversy to support its Notice of Removal, Defendants rely here on a conservative estimate of the amount in controversy based only on damages sought by Plaintiff as a result of the alleged: (1) Failure to Provide Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Furnish Accurate Itemized Wage Statements; and (6) Failure to Pay All Wages Due to Discharged and Quitting Employees.  Because the amounts in controversy for these four claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendants do not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other causes of action as alleged in the Complaint, including potential damages sought for the allegations of: Failure to Maintain Required Records; Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; Unfair and Unlawful Business Practices; and Penalties Under the Labor Code Private Attorneys General Act.  That said, Defendants reserve the right to do so in opposition to any remand motion.

### 2.    The Amount Placed in Controversy by the Failure to Provide Rest Periods Claim

23.    In his Second Cause of Action, Plaintiff alleges that Defendants failed to provide putative class members with rest periods. Exh. A, ¶¶ 26-29.  Plaintiff further alleges the following with respect to his rest period class claims:

- "DEFENDANTS consistently failed to authorize and permit PLAINTIFF and other similarly situated and aggrieved employees off-duty rest breaks, including failing to authorize and permit PLAINTIFF and other similarly situated aggrieved employees to take rest breaks in the middle of each work period insofar as practicable. *Id.* at ¶ 15.

- "As part of DEFENDANTS' illegal policies and practices to deprive their current and former non-exempt employees all wages earned and

due, DEFENDANTS failed to provide rest periods to PLAINTIFF and CLASS MEMBERS as required." *Id.* at ¶ 27.

As such, Plaintiff's allegation is that Defendants regularly and routinely failed to provide each member of the putative class with compliant rest periods due to unlawful uniform policies. *Id.* at ¶¶ 27.

24.    Under California law, employers must provide at least one 10-minute rest period for shifts 3.5 hours or greater. *Brinker Rest. Corp. v. Sup. Ct*., 53 Cal. 4th 1004, 1029 (2012). Employees who are not provided the opportunity to take a rest period are entitled to one hour of premium pay for each day that the opportunity to take a rest period is not provided. *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63 (2011). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Olson v. Becton, Dickinson & Co*., 19-cv-865-MMA, 2019 WL 4673329, *4-5 (S.D. Cal. Sept. 25, 2019); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926-27 (9th Cir. 2019).

25.    Based on a review of Defendants' business records, the putative class members worked at least 104,109 shifts at or exceeding 3.5 hours in length between August 8, 2018 and October 7, 2022 (the "Applicable Period"). Fox Decl. ¶ 10. The average hourly rate of the putative class members was $17.75 per hour during this period. *Id*. ¶ 9.

26.    Plaintiff's allegations do not quantify how often the putative class members were denied rest periods. Where, as here, no fact-specific allegations are set forth in the Complaint to indicate that the putative class or violation rate would be discernibly smaller than 100 percent, it is appropriate to rely on a defendant's calculations of the amount in controversy based on a 100 percent violation rate. *See Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (finding that the plaintiff had "include[d] no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%," in light of the plaintiff's vague allegation that the

7

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

putative class members "were 'not always provided lawful meal periods'").

27.    Instead of relying on the 100 percent violation rate allowed where plaintiffs, as here, failed to include any factual allegations indicating a lesser violation rate, Defendants conservatively assumed a violation rate of 50 percent rest period violations per workweek (or 2.5 days of a total workweek of 5 days) during the relevant period.

28.    Based on this conservative assumption, Defendants estimate that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant rest periods is at least $923,967.38 (104,109 qualifying shifts x .50 violation rate x $17.75 average hourly rate).  Fox Decl. ¶¶ 9, 10.

29.    Consequently, the amount placed in controversy by the Rest Period Claim is at least **$923,967.38**.

### 3.    The Amount Placed in Controversy by the Failure to Provide Meal Periods Claim

30.    In his First Cause of Action, Plaintiff alleges that Defendants failed to provide putative class members with meal periods.  Exh. A, ¶¶ 21-25.  Plaintiff further alleges the following with respect to his meal period class claims:

- "PLAINTIFF and other similarly situated aggrieved employees were given short meal breaks, provided meal breaks late (after the fifth hour of work for the first meal period and/or after the tenth hour of work for the second meal period), had their meal breaks interrupted, and/or were denied their meal breaks entirely."  *Id.* at ¶ 14.

- "As part of DEFENDANTS' illegal policies and practices to deprive their current and former non-exempt employees all wages earned and due, DEFENDANTS required, suffered or permitted PLAINTIFF and CLASS MEMBERS to take less than the 30-minute meal period, or to work through them, and have failed to otherwise provide the required meal periods to PLAINTIFF and CLASS MEMBERS."  *Id.* at ¶ 22.

As such, Plaintiff's allegation is that Defendants regularly and routinely failed to provide each member of the putative class with compliant meal periods due to unlawful uniform policies.  *Id.* at ¶ 22.

31.   Under California law, employers must provide at least one 30-minute meal period for shifts greater than 5 hours.  Cal. Lab. Code § 512(a); *Brinker Rest. Corp. v. Sup. Ct*., 53 Cal. 4th 1004, 1029 (2012).  Employees who are not provided the opportunity to take a meal period are entitled to one hour of premium pay for each day that the opportunity to take a meal period is not provided.  Cal. Lab. Code § 226.7(c); *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 63, 69 (2011).  Meal period claims are properly considered in determining the amount in controversy.  *See, e.g.*, *Unutoa v. Interstate Hotels and Resorts, Inc*., No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512, *2-*3 (C.D. Cal. Mar. 3, 2015); *see also Arias*, 936 F.3d at 925 ("[I]n assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" (citation omitted)).

32.   Based on a review of Defendants' business records, the putative class members worked at least 101,984 shifts exceeding 5 hours in length during the Applicable Period.  Fox Decl. ¶ 11.  The average hourly rate of the putative class members was $17.75 per hour during this period.  *Id*., ¶ 9.

33.   Plaintiff's allegations do not quantify how often the putative class members were denied meal periods.  Where, as here, no fact-specific allegations are set forth in the Complaint to indicate that the putative class or violation rate would be discernibly smaller than 100 percent, it is appropriate to rely on a defendant's calculations of the amount in controversy based on a 100 percent violation rate.  *See Muniz, supra*, 2007 WL 1302504, at *4.

34.   Instead of relying on the 100 percent violation rate allowed where plaintiffs, as here, failed to include any factual allegations indicating a lesser violation rate, Defendants conservatively assumed a violation rate of 50 percent meal period

violations per workweek (or 2.5 days of a total workweek of 5 days) during the relevant period.

35.    Under this conservative assumption, Defendants estimate that the amount placed into controversy by Plaintiff's claim for failure to provide legally compliant meal periods is at least $905,108 (101,984 qualifying shifts x .50 violation rate x $17.75 average hourly rate).  *See* Fox Decl. ¶ 11; *id.*, ¶ 9.

36.    Consequently, the amount placed in controversy by the Meal Period Claim is at least **$905,108**.

### 4.    The Amount Placed in Controversy by the Minimum Wage Claim.

37.    In his Fourth Cause of Action, Plaintiff alleges Defendants owes Plaintiff and putative class members unpaid minimum wages.  Exh. A, ¶¶ 35-38.  Plaintiff alleges that "DEFENDANTS failed to pay PLAINTIFF and CLASS MEMBERS the applicable minimum wages for all hours worked in a payroll period by, among other things: requiring, suffering or permitting PLAINTIFF and CLASS MEMBERS to work off the clock . . . ."  *Id.* at ¶ 37.  Plaintiff further alleges that Defendants forced "PLAINTIFF and other similarly situated and aggrieved employees to work off-the-clock without pay."  *Id.* at ¶ 18.

38.    As stated above, during the Applicable Period, Defendants employed approximately 465 Putative Class Members, who worked a total of approximately 26,339 workweeks.

39.    Given Plaintiff's allegations that the putative class members were regularly denied minimum wage, it is reasonable—and, in fact, conservative—to apply a violation rate of one hour of unpaid minimum wage per person, per workweek.  Based on a review of Defendants' business records, the putative class members worked at least 26,339 workweeks during the Applicable Period.  Fox Decl. ¶ 14.  Based on these allegations, if each putative class member worked only one hour

of unpaid minimum wage per workweek, the amount in controversy would be **$346,621.24** ($13.16[2] per hour x 26,339 workweeks).

40.    Plaintiff also seeks liquidated damages.  Exh. A, Prayer for Relief ¶ 4. Labor Code Section 1194.2(a) allows an employee to recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon" for failure to pay minimum wage.  The amount in controversy for the *liquidated damages* would therefore also be **$346,621.24** ($13.16 per hour x 26,339 workweeks), same as the minimum wage calculation.

**5.    The Amount Placed in Controversy by the Unpaid Overtime Claim.**

41.    In his Third Cause of Action, Plaintiff alleges Defendants owe Plaintiff and putative class members unpaid overtime wages.  Exh. A, ¶¶ 30-34.  Plaintiff further alleges the following with respect to his overtime class claims:

- "PLAINTIFF and other similarly situated and aggrieved employees often worked either more than 8 hours per day and/or more than 40 hours per week, but DEFENDANTS did not compensate them for their overtime work.  *Id.* at ¶ 17.

- "During the CLASS PERIOD, DEFENDANTS failed to compensate PLAINTIFF and CLASS MEMBERS for all overtime hours worked as required . . . ."  *Id.* at ¶ 32.

42.    Thus, the Complaint alleges Defendants consistently failed to pay Plaintiff and putative class members earned overtime wages.

43.    Under California law, an employee is entitled to overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked in excess of eight (8) per day and/or forty (40) per week.  (*See* Cal. Labor Code § 510.)

---

[2] The applicable minimum hourly wage for 2018 was $11.00; the applicable minimum hourly wage for 2019 was $12.00; the applicable minimum hourly wage for 2020 was $13.00; the applicable minimum hourly wage for 2021 was $14.00; the applicable minimum wage for 2022 is $15.00.  Based on the number of months during the Applicable Period that each minimum wage was in effect, the average minimum wage during the Applicable Period is $13.16.

Case No. 1:22-CV-00857

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

44.    Unpaid overtime is properly considered in determining the amount in controversy. *See, e.g., Rhoades v. Progressive Cas. Ins. Co., Inc.*, 410 Fed.Appx. 10, 11 (9th Cir. 2010) (amount of unpaid overtime properly considered in determining the amount in controversy).

45.    Where the Complaint does not specify the amount of alleged unpaid overtime worked, courts have found it reasonable to assume one hour of unpaid overtime per week. *Ray v. Wells Fargo Bank, N.A.,* 2011 WL 1790123, *6–7 (C.D. Cal. May 9, 2011) (The defendant's estimates based on one hour of unpaid overtime per class member were conservative and reasonable given allegation of consistent failure to pay overtime); *Stevenson v. Dollar Tree Stores, Inc.,* 2011 WL 4928753, *4 (E.D. Cal. 2011) (Where it was plaintiff's standard practice not to pay "requisite compensation for all hours worked," without more specific allegations to narrow the potential scope of damages, the complaint was not susceptible to precise calculations and defendant's assumptions were thus reasonable); *Jimenez v. Allstate Ins. Co.,* 2011 WL 65764, *3 (C.D. Cal. 2011) (Based on this allegation of "consistent" overtime work, the defendant reasonably "estimated one hour of unpaid overtime compensation per week for each putative class member.").

46.    Given Plaintiff's allegations that the putative class members were regularly denied overtime, it is reasonable—and, in fact, conservative—to apply a violation rate of one hour of overtime per person, per workweek.  Based on a review of Defendants' business records, the putative class members worked at least 26,339 workweeks during the Applicable Period.  Fox Decl. ¶ 14  The average hourly rate of the putative class members was $17.75 per hour during this period.  *Ibid*., ¶ 9. Based on these allegations, if each putative class member worked only one hour of unpaid overtime per workweek, the amount in controversy would be **$701,275.88** ($17.75 per hour x 1.5 overtime rate x 26,339 workweeks).

6.      **The Amount Placed in Controversy by the Failure to Provide Accurate Wage Statements.**

47.     Plaintiff's Seventh Cause of Action alleges Defendants failed to provide him and putative class members with accurate wage statements in violation of Labor Code § 226(a).  Exh. A, ¶¶ 49-52.  Specifically, Plaintiff alleges that "DEFENDANTS frequently provided non-compliant, inaccurate wage statements . . . for PLAINTIFF and other similarly situated and aggrieved employees as a result of these unlawful practices."  *Id*. at ¶ 18.

48.     Plaintiff's wage statement claim is thus derivative of his broader allegations that Defendants failed to pay putative class members properly with respect to minimum wage, overtime wage, meal break premiums, and rest break violations. *Id*. at ¶ 18.

49.     In turn, the Complaint alleges that Defendants had uniform policies that unlawfully denied Plaintiff and putative class members rest break premiums and meal break premiums.  *Id*. at ¶¶ 22, 27.

50.     Thus, the Complaint alleges Defendants consistently provided Plaintiff and putative class members inaccurate wage statements.

51.     Plaintiff asserts that as a result of Defendants' alleged failure to provide wage statements in compliance with California law, Plaintiff and the putative class are entitled to statutory penalties pursuant to Labor Code § 226(e).  Exh. A, at ¶ 111.

52.     In turn, Labor Code § 226(e) allows a plaintiff to seek penalties of: $50 per employee for the initial pay period in which a section 226(a) violation occurs; and $100 per employee for each subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee.  Cal. Labor Code § 226(e)(1).  There is a one-year statute of limitations for wage statement penalties claims brought under Cal. Labor Code § 226(e).  *See id.* at § 340(a).

53.     Defendants' calculation of Plaintiff's claim for non-compliant wage statements is $522,900.  Between August 8, 2021 and October 7, 2022 (*i.e.*, the one-

year statutory limitations period for Plaintiff's wage statement claim), there were no less than 322 putative class members who received at least one wage statement, and no less than 307 putative class members who received at least two wage statements. Fox Decl. ¶ 12.  There were no less than 5,382 pay periods worked by putative class members between August 8, 2021 and October 7, 2022.[3]  *Id.*  Therefore, there were no less than 5,382 wage statements issued to putative class members between August 8, 2021 and October 7, 2022.  *Id.*  There were biweekly 31 pay periods between August 8, 2021 and October 7, 2022, such that any putative class member would have at most[4] received 31 wage statements between August 8, 2021 and October 7, 2022. Company Decl. ¶ 8; Fox Decl. ¶ 13.

54.    A 100% wage statement violation rate is reasonable when a complaint "makes broad allegations of systematic violations."  *Baker v. Propak Logistics, Inc.*, No. EDCV-191241-JGBSHKX, 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *see also Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. June 22, 2017) (holding that an assumption of a 100% violation rate is reasonable in an amount-in-controversy calculation where Plaintiff made allegations that were "susceptible to broad interpretations").

55.    Here, given Plaintiff's allegations that he and the putative class members were subject to uniform policies that unlawfully denied Plaintiff and putative class members rest break premiums and meal break premiums (Exh. A. at ¶¶ 40, 48), Plaintiff claims that all putative class members routinely received inaccurate wage statements.

56.    The computation of the amount in controversy is based on conservative estimates that Defendants issued at least 5,382 wage statements to non-exempt

---

[3] Some putative class members were paid biweekly; some putative class members were paid bimonthly. Company Decl. ¶ 7.

[4] The number of pay periods for bimonthly paid putative class members was lower than the number of pay periods for biweekly paid putative class members during this time period.  Fox Decl. ¶ 13.

employees in California between August 8, 2021 and October 7, 2022, that there was one violation for each putative class member per pay period for which the employee was issued a paycheck during that statute of limitations period, that 322 wage statements were issued during a putative class member's first pay period, and that 5,060 wage statements were issued during subsequent pay periods.  Fox Decl. ¶ 12.

57.     As explained above, none of the putative class members would have received more than 31 wage statements each.  Assuming a statutory penalty of $50 for each of the 322 initial wage statements issued, and assuming a statutory penalty of $100 for each of the 5,060 subsequent wage statements issued, results in a specific calculation of ($50 x 322) + ($100 x 5,060) = $16,100 + $506,000 = $522,100. Because none of the putative class members received more than 31 wage statements, the per person cap of $4,000 is not implicated (since it requires at least 42 wage statements per person).

58.     Consequently, the amount placed in controversy by the Wage Statement Claim is at least **$522,100**.

### 7.     The Amount Placed in Controversy by Plaintiff's Waiting Time Penalties Claim

59.     In his Fifth Cause of Action, Plaintiff alleges that Defendants "willfully failed to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202."  Exh. A, ¶ 43.

60.     Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonwork days," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month."  *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section

203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id.* at 493.

61.    Here, Plaintiff's Section 203 claim is not premised only on the theory that Defendants failed to timely deliver final paychecks to terminated employees; rather, Plaintiff contends that Defendants owe penalties at least in part as a result of their purported failure to pay all wages due and owing during putative class members' employment, as well as the alleged failure to pay rest period and meal period premiums when due. Exh. A, ¶ 17. In light of the fact that, through his Complaint, Plaintiff is also seeking to recover, *inter alia*, alleged minimum wages, overtime wages, meal period premiums, and rest period premiums, allegedly owed, it is clear that Plaintiff's theory is that such alleged unpaid wages still have not been paid to Plaintiff and putative class members. It is, therefore, reasonable to calculate the amount in controversy for this claim based on a 30-day penalty. *See Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "regularly required" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc*., No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

62.    Defendants' calculation of Plaintiff's claim for waiting time penalties for failure to timely pay all wages upon termination results in exposure of $877,560.

63.    This calculation was conservatively derived by (1) taking the number of putative class members who separated from employment between August 8, 2021 and October 7, 2022,[5] which was 206 putative class members (Fox Decl. ¶ 8)  (2) assuming each of these putative class members is owed overtime wages, rest period premiums, meal period premiums, and/or minimum wages,[6] and thus allegedly entitled to receive waiting time penalties for their separation, (3) assuming the full 30 days applies to the waiting time penalty, (4) assuming a "day" for the purposes of the waiting time penalty constitutes eight hours[7] worked; and (5) using putative class members' average rate of pay ($17.75) to calculate the waiting time penalties.

64.    Consequently, the amount placed in controversy by the Waiting Time Penalties Claim is **$877,560** (206 terminated putative class members x $17.75 x 8 hours per day x 30 days).

### 8.    Attorneys' Fees Further Increase the Amount in Controversy

65.    When an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 788 (9th Cir. 2018) ("We conclude that if a plaintiff would be entitled under a contract or statute to future attorney's fees, such fees are at stake in the litigation and should be included in the amount in controversy."); *Muniz*, 2007 WL 1302504 at *3 ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint.").

---

[5] The applicable statute of limitations for waiting time penalty claims pursuant to Section 203 is three years.  Cal. Code Civ. P. 338(a); *Pineda v. Bank of Am.*, 50 Cal. 4th 1389 (2010).

[6] In light of the Complaint's allegation that Defendants' purported failure to timely pay all wages due upon termination was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11.

[7] Most putative class members worked shifts of at least 8 hours.  Company Decl. ¶ 9.

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

66.     Here, Plaintiff claims that he is entitled to attorneys' fees for various alleged violations of the California Labor Code.  Exh. A, ¶¶  1, 33, 34, 38, 45, 48, 52, 56, 65, Prayer For Relief ¶ 9.

67.     The Court may consider all attorneys' fees that at the time of removal can reasonably be anticipated will be incurred over the life of the case.  *See Fritsch*, 899 F.3d at 794 ("Because the law entitles [Plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting that "potential attorneys' fees" could be considered for purposes of meeting the amount in controversy requirement); *Haase v. Aerodynamics Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *5 (E.D. Cal. 2009) ("[B]ecause attorney's fees are expressly authorized by statute, such fees may be included in determining the amount in controversy . . . ."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (stating that "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred" and noting that "attorney's fees cannot be precisely calculated" but making projection of likely fees based on the court's "twenty-plus years' experience" overseeing similar cases).

68.     As detailed above, the amount in controversy for six of Plaintiff's claims is at least $**4,623,253.74** (i.e., the totals of the amount in controversy for all six claims).  The amount in controversy could be further increased by at least 25% to account for potential attorneys' fees.  Attorneys' fees awards in other employment actions show that attorneys' fees awards in wage-and-hour class actions often exceed 25% of the underlying amount in controversy.  *See Muniz*, 2007 WL 1302504 at *4,

n.8 (noting that in California, where wage and hour class actions have settled prior to trial, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement); *see also Jasso*, 2012 WL 699465, at *7 (noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'") (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998)).

69.     Accordingly, Defendants conservatively estimate that Plaintiff's attorneys' fees in this matter are likely to be at least 25% of the amount placed in controversy through Plaintiff's claims, or **$1,155,813.44**.

### 9.    Summary of Defendants' Calculations

70.     As described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiff's rest period, wage statement, and waiting time penalties claims exceed $5,000,000.  Indeed, these six claims alone have placed at least **$5,779,067.18** in controversy, as follows:

| Claim | Estimated Exposure |
|---|---|
| Rest Period Claim | $923,967.38 |
| Meal Period Claim | $905,108 |
| Minimum Wage Claim | $346,621.24 |
| Liquidated Damages | $346,621.24 |
| Overtime Pay Claim | $701,275.88 |
| Wage Statement Claim | $522,100 |
| Waiting Time Penalties Claim | $877,560 |
| **Sub-Total** | **$4,623,253.74** |
| 25% Attorneys' Fees | $1,155,813.44 |
| **TOTAL** | **$5,779,067.18** |

Consequently, the amount placed in controversy by just six of Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III.   DEFENDANTS HAVE SATISFIED THE REMAINING REMOVAL REQUIREMENTS

71.   <u>Venue is Proper</u>.  In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Superior Court of the State of California for the County of Sacramento is located within the Eastern District of California.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

72.   In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibits to this Notice.

73.   In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Sacramento.  Notice of compliance shall be filed promptly afterward with this Court.

74.   As required by Federal Rule of Civil Procedure 7.1, Defendants concurrently filed their Certificate of Interested Parties and Disclosure Statement.

75.   Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendants request that the Court issue an Order to Show Cause so that Defendants may have an opportunity to more fully brief the basis for this removal.

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

1    WHEREFORE, Defendants remove the above-captioned action to the United

2  States District Court for the Eastern District of California.

3

4  DATED:    October 27, 2022          OGLETREE, DEAKINS, NASH, SMOAK &
                                       STEWART, P.C.
5

6

7                                      By: */s/ Ryan H. Crosner*
                                           Ryan H. Crosner
8                                          Briana LaBriola
                                           Attorneys for Defendant
9                                          TRICOLOR AUTO GROUP, LLC;
                                           TRICOLOR CALIFORNIA AUTO
10                                         GROUP, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE
OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

# PROOF OF SERVICE

*Thomas Cross v. TRICOLOR Auto Group, LLC et al.*
Case No. 1:22-CV-00857

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA 92626.

On October 27, 2022, I served the following document(s):

**DEFENDANTS TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☒    **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒    **BY CM/ECF:** With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

☒    **(Federal)**    I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 27, 2022, at Costa Mesa, California.

Nieka Caruthers-Dodson
_____
Type or Print Name

_____
Signature

1

1

***SERVICE LIST***
*Thomas Cross v. TRICOLOR Auto Group, LLC et al.*
Case No. 1:22-CV-00857

2

3

4   Matthew J. Matern                    Attorneys for Plaintiff
    Joshua D. Boxer                      Thomas Cross
5   Clare E. Moran
    MATERN LAW GROUP, PC
6   1230 Rosecrans Avenue, Suite 200
    Manhattan Beach, CA  90266
7   Telephone: 310.531.1900
    mmatern@maternlawgroup.com
8   jboxer@maternlawgroup.com
    cmoran@maternlawgroup.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TRICOLOR AUTO GROUP'S AND TRICOLOR CALIFORNIA
AUTO GROUP, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO
UNITED STATES DISTRICT COURT